Mr. Bauer was convicted of driving with an alcohol concentration of 0.08 or greater. The evidence of that alcohol concentration was premised upon Plaintiff's Exhibit 1, a report of a hospital serum alcohol concentration analysis. The issue before the court for review and the issue that was raised before the trial court deals with whether this lab report was obtained as a result of misuse of the grand jury subpoena power, and if so, should that evidence have been excluded. The circumstances that led up to the prosecution obtaining that lab report are critical to the before the court. Mr. Bauer was involved in an automobile accident. An Illinois State Police trooper went to the scene of the accident before Mr. Bauer was taken from the accident scene to the hospital for treatment of his injuries. The trooper did have some contact with Mr. Bauer at the time of the accident, but he did not have an alcoholic beverage. In his first appearance before the grand jury, the trooper testified that there was no indication that the accident was alcohol related. Within a week of the accident, the trooper contacted the hospital to ask whether any blood alcohol testing or urine testing had been done, and the trooper spoke with both a nurse and a nursing supervisor and was informed that no such blood or urine testing had been done to determine the alcohol concentration. Shortly thereafter, the state's attorney appeared before the grand jury. The accident happened in March of 2007. The first appearance of the state's attorney was in April of 2007, and at that appearance before the grand jury, the state's attorney had a subpoena, and it was entitled Subpoena Ducis Tecum, dated April 17, 2007, that's Defendants Exhibit 5, and the state's attorney told the grand jury this is a subpoena ducis tecum, and what I'm asking is for Carl Finnecasville to produce to us at the next meeting of the grand jury copies of any and all blood and or urine tests done pertaining to Mr. Bauer, and the state's attorney explained to the grand jury we have to subpoena them because of all the privacy interests that are involved, so we'll be subpoenaing these records, and then the state's attorney had the trooper testify about the accident, including the fact that the officer didn't detect alcohol and didn't have any indication that the accident was alcohol related. The state's attorney had prepared the subpoena before that April 17th grand jury appearance. The subpoena was not initiated by the grand jury. None of the grand jurors requested the state's attorney to do that. Nevertheless, the subpoena was issued, and it directed production of those materials by the hospital on May the 15th, and directed that they be produced to the grand jury. The state's attorney's name, address, and telephone number was on the subpoena, and the hospital sent a packet of materials to the state's attorney's office. The state's attorney opens the envelope, sees that they're grand jury materials, doesn't seal the envelope back up, doesn't deliver the materials to the grand jury, examines the materials, and the materials include a document indicating there were labs drawn, but none of them pertain to blood alcohol concentration. All of that's a part of Defendant's Exhibit 5. The state's attorney opened those materials, examined those materials before the return date of the subpoena before the grand jury. On that return date, though, the state's attorney appears before the grand jury, says, well, I got this stuff. I didn't recognize it to be grand jury material, and I opened it, and I looked at it, and there's no record of any testing to determine alcohol concentration. So the state's attorney requests the grand jury to release those materials to the state's attorney, and the state's attorney says that the state's attorney is going to the state's attorney before the grand jury, contact the hospital. There's no subpoena outstanding at that point. The grand jury didn't ask the state's attorney to contact the hospital. The grand jury is apparently not conducting any investigation, simply issuing the first subpoena requested by the state's attorney, and the state's attorney then comes back to the grand jury on August the 16th with another subpoena, and has the state's attorney investigator testify that we, the state's attorney's office personnel, contacted the hospital after appearing before the grand jury with regard to the first subpoena, and determined that apparently there are no blood or urine alcohol test results, but there might have been a preliminary breath test. And the state's attorney then presents the second subpoena news that's taken to the grand jury, August the 16th. It's issued by the foreperson of the grand jury. Again, it has the name and address and telephone number of the state's attorney on there, although the materials are being produced before the grand jury, and there's a return date, September the 13th. The materials, again, are sent to the state's attorney's office by the hospital, and including an accounting of the disclosure with regard to that second subpoena news that's taken, issued August the 16th, and indicates on August the 20th there's a disclosure to state's attorney at datas, 156 pages, entire hospital record. The second subpoena wasn't as limited in scope as the first one. The first one's seeking only the reports of testing to determine alcohol concentration. The second subpoena, much broader, just general hospital records concerning the patient. So 156 pages of hospital records get sent to the office of the state's attorney. Again, the state's attorney opens the packet, doesn't close the packet up, realizing that their grand jury materials, looks at all of the materials of the return date, doesn't deliver the materials received to the grand jury, and then after the return date, about a month after the return date, before appearing again before the grand jury, with no direction from the grand jury to do anything, contacts the hospital on October 23rd, again in the disclosure of defendant's exhibit four, and obtains disclosure that there was a lab report, people's exhibit one, and has the hospital provided it. That wasn't in the So you have, before any grand jury proceeding, police officer contacts the hospital and is informed no blood alcohol testing. First subpoena, specifically seeking reports of blood alcohol testing, a document, there were labs drawn but none of them pertained to blood alcohol concentration. 156 pages of hospital records produced. No record of any blood alcohol testing. So again, with no direction from the grand jury, with no effort to seek some enforcement of a subpoena by the court, the state's attorney on his own obtains that disclosure, receives claims to exhibit one, the third packet of materials sent to the state's attorney's office, rather than delivered to the grand jury, opened by the state's attorney, examined by the state's attorney, without simply delivering the packet when realizing that it's grand jury material of the grand jury, and then in November, the state's attorney appears before the grand jury and says, well, I've got this stuff now. Mr. Vivarito, all of this, I mean this particular document, the blood alcohol test, could have been obtained without any grand jury proceedings? Could have been obtained when the officer contacted the hospital and asked for information regarding blood alcohol testing, and I think that's... There's a statute, it hasn't been decided by anybody, it's 501.4-1 that says, paraphrasing, that notwithstanding any other provision of law, if there's an automobile accident, a hospital is required to disclose those types of reports upon request by state police or local police. So I mean really all the, there's a lot of discussion in your brief about how this was really a police investigation, and by statute, police officers are authorized to just go to the hospital and say, give me the report. So how is your client prejudiced? In the same manner that the clients in the series of cases that are discussed in one of the cases cited by the prosecution, or cited by the prosecution refers to a series of cases, not on grand jury subpoenas, but on subpoenas due to state commission at the request of the hospital. In those cases, there was a statute making written reports of blood alcohol testing admissible in evidence, and there was an exception to the confidentiality provisions of the law. And in those cases, including Kaiser, what happened is the state's attorney had a subpoena directed to the hospital to get access to such a record, and ultimately obtained that information. The subpoena process, however, was not appropriate because the subpoena resulted in the materials going to the state's attorney rather than the court. And in Kaiser, Kaiser objected, moved to quash, moved to exclude the evidence, and in that case, even though the results would have ultimately been admissible, because at the time of the issuance, the state's attorney, or apparently the prosecution, didn't have any information indicating that there had been any such testing, the court characterized it as a, quote, fishing expedition, close quote. So once the state's procedure was not appropriate, a second subpoena is issued following the appropriate procedures, having it returnable to the court, and the appeal, despite the fact that that evidence may have ultimately been admissible, the court determined that the process used to obtain the evidence was improper, and therefore the prosecution could not obtain or use the evidence against the accused. That's essentially the theory here. You're right. Ultimately, had the hospital told the police officer when the police officer first asked, yeah, there was a blood test, we wouldn't be here. It is the process that was employed to ultimately obtain this evidence that Chris Bauer submits was a misuse of the grand jury subpoena power. Because frankly, had this been a subpoena, instead of the prosecutor taking this to the grand jury and asking the grand jury to issue the subpoena, if the prosecutor had simply opened an MR case, had the court issue a subpoena, it would have been returnable to the court. So when the first result comes back saying there were labs drawn, but none pertaining to blood alcohol, if the state's attorney went back to the court and requested issuance of another subpoena for general hospital records, and the court said, well, wait a minute. We've been through this once before. You already got information indicating that there aren't any test results. Why are you seeking another subpoena? The court may have been reluctant to issue that second subpoena, may not have issued that second subpoena, and Chris Bauer would have noticed of those subpoenas and would have been in a position to object. Let me go a little different way as far as the issue of prejudice. People v. Wilson, which you cite, there the Supreme Court did conclude that the state's attorney misused the grand jury process, but I believe this is a quote from the case. The court said, if proper procedures had been followed, however, the state's attorney could still have received the documents from the grand jury. Thus, defendant was not prejudiced by the process used to obtain mental health records. So there they said, okay, the state's attorney misused the process, but if they had come back to the grand jury, he still would have got to see them, so there's no prejudice. So kind of the same thing here, isn't it? If proper procedures had been followed, the converse of that is, if proper procedures had not been followed... Well, they found that they had not been followed. I'm sorry? The Supreme Court found that proper procedures had not been followed in that case, right? They said that the state's attorney misused the grand jury process, but they said even if it used proper procedures and the documents would have come back to the grand jury, the state's attorney still would have got to see them, so therefore no prejudice. The court says, however, the state's attorney could still have received the documents from the grand jury. Implicit in that is the proposition cited by our Supreme Court in Wilson and Watson that grand jury subpoenas, like judicial subpoenas, are returnable either to the court or the grand jury. It's up to the grand jury to decide whether to release the material. If the grand jury had gotten these materials in this case and, first off, got a document from the hospital that says no blood alcohol tested, could the grand jury have released that to the court? Maybe not, because if this was really a grand jury investigation, if what was really happening here is the grand jury was directing these activities and investigating whether Chris Bauer should be charged with a crime or should not be charged with a crime, and the grand jury, before getting that return on the first subpoena, here's the police officer saying didn't smell any alcohol, no reason to believe alcohol was involved, and then they get a document from the hospital saying no labs pretending to blood alcohol concentration. Could that have been released by the grand jury to the state's attorney if the grand jury decided to do it? Yes, but if the grand jury was really controlling the process here, that may have been the end of the inquiry. If you take it to the next level and you say, well, maybe the grand jury wanted to take another bite of the apple, so the grand jury has the second subpoena issued for general hospital records, thinking let's use a wider net here to see what we can drag in, and then in response to the second subpoena gets 156 pages of hospital records with nothing about alcohol testing. Could the grand jury have released those to the state's attorney if it chose to do so? Yes. Would we be here today if the grand jury did this investigation? We really don't know. Well, in other words, the state's attorney is very persistent here, and he probably would have been persistent with the grand jury too, and the police officer may have testified I had information to believe that he was at four different establishments drinking the evening before, etc., etc., etc., and the grand jury probably said okay, try again for all we know. Well, but I take it you're sure that this is your client's lab test, or we wouldn't be here? Well, why not? Well, I mean, it sure took a long time for it to surface. One of the motions that was raised in the trial court level that wasn't raised as an issue on appeal was, you know, by the time this thing surfaces, the blood that was tested, actually it's not blood, it's serum, is long gone, so we have no way of knowing whether it really was. I can't say that it wasn't, you know, it's under his name, so I guess in answer to your question regarding that statement about Wilson, proper procedures weren't followed. Thank you, counsel. Excuse me, counsel? Counsel, one thing is undisputed is that there was a blood alcohol test on the defendant, and, you know, this isn't an issue that's been raised on appeal, and so it is settled. He's been convicted and it was his blood test, and it's undisputed that the that blood test resulted in its initial subpoena, and that the hospital made an error and did not, it didn't find it. The defendant had two different patient numbers, and they didn't find it, and they didn't turn over. It's an error, but the grand jury saw it. Now, the first subpoena that the state's attorney prepared for the grand jury, the state's attorney didn't issue that. He prepared it, just like support staff would prepare something. It was the grand jury. He asked the grand jury to issue it, and it is signed by the former. It is issued by the grand jury. It was not issued by the state's attorney on behalf of the grand jury and served and then had return in court. That's not what happened here, although cases will say that it's a proper procedure to have the grand jury, have the state's attorney prepare and serve a grand jury subpoena and have return of the materials to the grand jury. That's proper procedure, but that isn't what happened here. What happened here was there was a two-car accident. It happened on a Sunday afternoon at 1244, broad daylight. The trooper said there was no apparent reason for this man's, for the defendant's vehicle to have crossed the center line and continued on into the other lane. And so, you know, it was a mystery as to why such an accident should have occurred. So the officer did investigate, and he did investigate, and he found that the defendant had been the night before to four different establishments and had consumed alcohol. So on the basis of that, you know, the inexplicable nature of the accident and the fact that the defendant, there's some evidence that the defendant had been drinking the night before in four different establishments. On the basis of that, the grand jury to issue this subpoena. So it was the grand jury that was investigating this, and that subpoena was, commanded them to produce copies of any and all blood or urine tests done on the defendant at that particular time, all right? Now, and it was to be returned to the grand jury. Now, as the preparer, yeah, the state attorney's name and address appeared in the corner, but they were commanded to produce to the grand jury on the 15th of May this material, and they didn't find it. Now, that's an error. That's not a, it's not that the grand jury then decided to quit seeking it, but the hospital erroneously replied that it didn't, that they, that none had been performed, or they couldn't find it, or whatever. But, but, so there's, there's nothing improper. There's nothing going outside of the grand jury. There's nothing, no, nothing that the the state's attorney is doing to subvert or, or improperly use a subpoena to get materials. He is going entirely underneath the authority of the grand jury, and it is the grand jury that issued the subpoena. It is the state's attorney that really prepared it, and the grand jury issued the subpoena on the basis of the testimony that they heard from the trooper. So, on May 15th, the, the, the, the return was made to the state's attorney's office, and that square that's drawn across around the copy, the green copy, that was on the original subpoena. It's on the copy, and it was obviously something that staff did at Carl Hospital, but they were not commanded to return it to the state's attorney. That wasn't, that, that abuse did not happen. What happened was, they did return it to the state's attorney, but not in his direction, and he did open it and examine it. But this is not improper, as I will discuss in a minute, but I want to straighten out some of the facts before I get my argument. On August 16th, then, the grand jury continued its investigation, and again, the state's attorney had, I mean, the officer had testified before that it's, when there's a vehicle accident, it's in his experience that patients that are treated in that accident, particularly drivers, will be tested for blood alcohol contents because of the nature of treatment in the emergency room, and that they're probably, they just really suspected there had to be one, and there has to be a mistake. The, at that, on August 16th, again, the state's attorney had prepared another grand jury subpoena, and he asked the grand jury to issue this. He didn't issue it himself, the grand jury did it again, and again, the return was to be made to the grand jury at a certain date, and the preparer's name and address, the state's attorney's name and address did appear on there, but they were not commanded to return this to the state's attorney, so that did not happen. The abuse that's condemned in Wilson did not happen, where the state's attorney prepared a subpoena in the grand jury's behalf, did not consult the grand jury about it, but issued it himself on behalf of the grand jury, and then had the return made to himself. That abuse did not happen here. Here, the state's attorney is doing his best to get a hospital to comply with what the grand jury initially sought on the basis of some evidence that the defendant might have been drunk, and on the basis of some evidence that persons treated for accidents, automobile accidents, are generally tested for blood alcohol. So the second one issued, there was no instruction that the return should be made to the attorney, to the state's attorney's office. There were two returns, and defendants exhibit four, which is the hospital records, seem to indicate that they're returning this in response to a subpoena. Under HIPAA, they can do that. Outside of HIPAA, they cannot. I mean, if there's a valid grand jury subpoena, then they can return requested medical information. So it was, these two returns were made by the hospital in response to this second subpoena that was issued by the grand jury on the 16th. And the second return, first was August 20th, and the second return was October 23rd. And true, yes, again, both of these were returned, sent back to the state's attorney's office, and they were opened and examined by the state's attorney prior to their being presented to this documentation, prior to this being presented to the grand jury. But as I will discuss in a minute, there's no problem with that. One thing that is salient is that the state's attorney did nothing with this material that he was sent. He didn't use it to further any kind of private investigation. He didn't use it to get a search warrant. He didn't get it to do, to get anything else. He didn't use it to further, he did nothing with it but examine it and then present it to the grand jury. So, you know, even under Wilson, you know, and the grand jury is going to release this, and the court is going to order it released to the state's attorney on November 15th. So, you know, in Wilson, as you pointed out, the state's attorney had done everything improperly. He had issued it without the grand jury's knowledge. He had the return made to the state's attorney's office in Wilson. And furthermore, the grand jury never saw the material. So, I mean, there were three large strikes in Wilson that went outside of the proper procedures. And yet the Illinois Supreme Court said the defendant suffered no prejudice because the materials could have been released to the state's attorney. So, but here we don't have any of the problems that were in Wilson. We don't. The only thing that we have is that the state's attorney opened and examined the materials prior. Now, in DeLair, in Dicta, admittedly, which is cited in the People's Brief, which is a second district case, it says there's nothing improper. And actually, DeLair is quoting W. Lefebvre commentary on the law. And it says, and DeLair quotes this with approval, that the prosecutor may screen the defendant, but he can't use the subpoena as a ruse to obtain information. And that's exactly what the state's attorney had to hear. Now, later on, the defendant cites Feldmeier, which comments on DeLair. Feldmeier is also a second district case. And in that case, the assistant state's attorney had issued a grand jury subpoena in the state's attorney's name and, in the grand jury's name, and had the return to be made to her as the assistant state's attorney. And in Feldmeier, the state over-relied and over-interpreted DeLair to say, well, you said in DeLair that the state's attorney is merely an agent of the grand jury, so this was okay because they could have their return made to them and then examine it. And in Feldmeier, the second district said, no, this goes too far. You're stretching DeLair out of proportion. And you can't rely on DeLair to say that as an agent of the grand jury, an assistant state's attorney can issue a grand jury subpoena and have their return made to her. Well, of course, they can't. That's contrary to the very holding of DeLair. But they never backed off of saying that when there's been a properly issued grand jury subpoena that the state's attorney can't preview the materials before presenting it to the grand jury itself. And some of this stuff was pretty inscrutable. I mean, medical records and lab reports. But the salient point is outside of previewing the materials, the 156 pages and the blood alcohol result, the state's attorney did nothing with it but present it to the grand jury where it belonged. And the grand jury then ultimately in January 15th of 2008 issued an indictment based on that and further testimony that flushed out how many drinks the defendant had had in the 12 hours since he started drinking and how much sleep he had and when he had an accident. And it was like 14 drinks in 12 hours and then six hours of sleep and then he gets up and drives and he has this accident. So there's been no abuse of the grand jury process here. And this court should affirm the court's belief. Thank you, counsel. Counsel? To characterize the issuance of two subpoenas deuces taken as a grand jury investigation would be akin to characterize the issuance of a bill of indictment as a deliberation. All that happened here is the prosecution presented on two occasions subpoenas to the grand jury and essentially said issue. Isn't that pretty much what happens in most grand jury proceedings? They follow the state's attorney's lead on which witnesses to call. He makes suggestions. That may well be, but that doesn't make it procedurally correct. Is there? Well, is there anything wrong with the state's attorney suggesting you might want to get these records? You might want to call this witness. I mean, that's what the way it works, isn't it? Absolutely not. But here's what's missing. In none of these proceedings did the did the state's attorney come to the grand jury and say, we've got this accident investigated. All we've got is I got this subpoena. Issue it. It would be like going to the grand jury and saying, I got an indictment here. Issue it. And let me ask a question about that because I haven't seen the record yet. But in the initial proceeding, wasn't the state trooper put on the stand in front of the grand jury? Yes. I mean, the very first time. So, I mean, wasn't, didn't it become a grand jury investigation then? He was put on there and he specifically was asked, are you asking the grand jury to issue this subpoena so that you can conclude your investigation? Where's that effect? A police investigation, not here's my trooper. Here's some information, grand jury. Now take this and investigate. In fact, with regard to both of these subpoenas, the record will establish that the reason the subpoenas were requested wasn't to further any grand jury investigation. It was to further a police investigation and the Feldmeier and other cases say that the prosecution cannot usurp the power of the grand jury and use the grand jury subpoena power to further a police investigation. It's supposed to be used to further a grand jury investigation. Now there is one. If in the end they've got the documents and then the state's attorney just would have filed an information, that'd be a little stronger, but it resulted in a bill of indictment from the grand jury. At the end of whatever kind of investigation this was, whether you want to call it police investigation or grand jury investigation, in the end, the grand jury found a true bill. Based upon People's Exhibit 1 in part with regard to the alcohol concentration because one of the counts of the bill was based upon an alcohol concentration of oil or greater. Without that item, there would not have been an indictment on that charge. So it all hinges on whether that item was obtained as a result of a misuse of the grand jury subpoena power or not. And here's where the prejudice is because you asked about Wilson. This wasn't the hospital producing that item in response to a grand jury subpoena. The return date on the subpoena had come and gone. This was the hospital producing it because the state's attorney called and got disclosure of it. That's not a return on a grand jury subpoena. That's unauthorized access to patient medical information using the grand jury subpoena process to get to that eventual disclosure. Now, the Watson opinion of the Illinois Supreme Court suggests what the procedure ought to be. In other words, if a respondent simply doesn't respond to a grand jury subpoena or doesn't respond to the extent that the grand jury thinks that it should, the next step is that the matter is taken before the court and the court decides whether to enforce that subpoena. That step never happened. The state's attorney took it upon himself without being obtained disclosure from the hospital of patient medical information. That's a misuse of the process and it is in part on that basis that we believe that when the trial court found that plaintiff's exhibit one was produced in response to a grand jury subpoena that it's contrary to advisement there being no further oral argument before the court.